ESTATE OF STEWART E. KETT, DECEASED, BRANDON F. KETT AND SHEPARD L. KETT, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.Estate of Kett v. Comm'rNo. 1742-94United States Tax Court1994 U.S. Tax Ct. LEXIS 89; January 28, 1994, Filed Copy of petition for redetermination of the deficiency set forth by respondent in his notice of deficiency issued by the court. *89 JOHN F. RAMSBACHER, ESQ. LAW OFFICES OF OWEN G. FIORE San Jose, CaliforniaPEITTIONThe Petitioner hereby petitions for a redetermination of the deficiency set forth by the Commissioner of Internal Revenue Service in his Notice of Deficiency (Service symbols FIELD-90D) dated October 26, 1993, and, as the basis for Petitioner's case, alleges as follows:1. The Petitioners are the duly qualified and presently acting Co-Executors and personal representatives of the Estate of Stewart B. Kett. Petitioner's address is 110 Carlton Road, Watsonville, California 95076. The taxpayer identification (social security) number of the decedent, Stewart B. Kett, ("decedent") was 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 and the taxpayer identification number of Petitioner, namely the Estate of Stewart B. Kett is 77-6059307. Petitioner, as Co-Executors of the Estate of Stewart B. Kett, who died on January 26, 1990, timely filed a federal estate tax return (IRS Form 706) on or before October 26, 1990, with the Fresno Service Center of the Internal Revenue Service.2. The Notice of Deficiency (a copy of which is attached and marked Exhibit A) was mailed to the Petitioner on October 26, 1993, and was issued by the District*90 Office of the Internal Revenue Service in San Jose, California.3. The deficiency, as determined by the Commissioner, is in estate tax in the amount of $ 5,092,906, all of which is in dispute.4. The determination of tax set forth in the Notice of Deficiency is in error for the following reasons:(a) The Commissioner erroneously disregards well-reasoned and commonly accepted valuation principles regarding application of nonmarketability and non-controlling interest adjustments, as well as costs of liquidation, to determine the fair market value of decedent's interest in the following:(i) 79.88% interest in a 51-unit apartment building located at 650 Corcoran Street, Santa Cruz, California (Sched. A, Item 3).(ii) 50% interest in a 32-unit apartment building located at 611 Tuttle Avenue, Watsonville, California (Sched. A, Item 4).(iii) 60% general partnership interest which owns a rental house and 2.23 acre parcel of land located at 231 Lakeview Road, Watsonville, California (Sched. A, Item 10).(iv) 69.13% general partnership interest which owns a 68-unit apartment building located at 919 Capitola Avenue, Capitola, California (Sched. A, Item 11).(v) 50% interest in a condominium*91 located at 1150 Lombard Street, San Francisco, California (Sched. A, Item 17).(vi) 50% general partnership interest which owns a 24-unit apartment building located at 1156 San Benito Street, Hollister, California (Sched. A, Item 18).(vii) 60% general partnership interest in Moss Landing Investment, a California limited partnership (Sched. F, Item 3).(viii) The Glenn Building Limited Partnership, a California limited partnership, in which decedent owned a 9.136% limited partnership interest directly and also effects the valuation of College Stuart Corporation, Berkeley Leasing & Realty Company, Values, Inc., and Values Inc. Investment, which own a combined 81.204% interest in The Glenn Building Limited Partnership, the sole shareholder of which is the decedent (Sched. F, Item 4).(ix) 20% interest in house and lot located at 6015 El Camino, Carmel, California (Schedule G, Item 3).(x) 50% interest in real property located at 187 Autumn Hills, Minden, Nevada (Sched. G, Item 4).(xi) 50% interest in real property located at 110 Hecker Pass Road, Watsonville, California (Sched. G, Item 5).(xii) Remainder interest in a 50% interest in real property located at 100 Carlton Road, *92 Watsonville, California (Sched. G, Item 6).(xiii) 50% interest in real property located at 110 Carlton Road, Watsonville, California (Sched. G, Item 7).(xiv) 50% interest in unimproved light industrial site located on Anna Drive, Watsonville, California owned by Values, Inc. Realty, a California Corporation, which decedent was sole shareholder.(xv) 10 shares of common stock, representing a 100% ownership interest, in Values Inc. Construction (Sched. B, Item 1).(xvi) 31,790 shares of common stock, representing a 100% ownership interest, in Berkeley Leasing & Realty Company (Sched. B, Item 2).(xvii) 100 shares of common stock, representing a 100% ownership interest in Values, Inc. (Sched. B, Item 3).(xviii) 57 shares of common stock, representing a 100% ownership interest, in Values Inc. Investment (Sched. B, Item 4).(xix) 10 shares of common stock, representing a 100% ownership interest, in Values Inc. Realty (Sched. B, Item 5).(b) The Commissioner erroneously assumes that in those instances when the Petitioner obtained two real property appraisals on a particular property that the Petitioner must consistently accept one appraiser's opinion on all properties rather than*93 choose the appraisal to use based on what the Petitioner believes to be the most accurate representation of fair market value for that particular piece of real property. The valuation of the decedent's interest in the following properties is at issue:(i) 100% interest in a 32-unit apartment building located at 2415 College Avenue, Berkeley, California (Sched. A, Item 15).(ii) 50% interest in a condominium located at 1150 Lombard Street, San Francisco, California (Sched. A, Item 17).(iii) 50% general partnership interest which owns a 24-unit apartment building located at 1156 San Benito Street, Hollister, California (Sched. A, Item 18).(iv) 100% interest in a rental house located at 470 Brown Valley Road, Corralitos, California (Sched. A, Item 19).(v) 100% interest in real property located at 1947 Oregon Street, Berkeley, California owned by Values, Inc., a California Corporation, of which decedent was sole shareholder (Sched. B, Item 3).(vi) 100% interest in real property located at 2333 Portola Drive, Santa Cruz, California owned by Values, Inc., a California Corporation, of which decedent was sole shareholder (Sched. B, Item 3).(vii) 100% interest in real property located*94 at 2418 Dwight Way, Berkeley, California owned by Values, Inc. Investment, a California Corporation, of which decedent was sole shareholder (Sched. B, Item 4).(viii) 100% interest in real property located at 3053 Dohr, Berkeley, California owned by Values, Inc. Investment, a California Corporation, of which decedent was sole shareholder (Sched. B, Item 4).(ix) 100% interest in real property located at 900 Capitola Avenue, Capitola, California owned by Values, Inc., a California Corporation, of which decedent was sole shareholder (Sched. B, Item 3).(x) 100% interest in real property located at 2628 Telegraph, Berkeley, California owned by Values, Inc. Investment, a California Corporation, of which decedent was sole shareholder (Sched. B, Item 4). (c) The Commissioner erroneously disregards the negative effect on the fair market value of potential income tax due on the unrealized gain on highly appreciated assets owned by certain entities. The Commissioner fails to take into account the downward adjustment in the willing buyer's perception of value of corporate equity where properties held by the entity cannot be disposed of without incurrence of substantial capital gains liability. *95 This issue effects the valuation of the following entities in which decedent was the sole shareholder:(i) Berkeley Leasing & Realty Company (Sched. B, Item 2).(ii) Values, Inc. (Sched. B, Item 3).(iii) Values Inc. Investment (Sched. B, Item 4).(d) The inclusion of 4942 shares of HS Resources is not in ispute. However, the Commissioner erroneously disregards ppropriate nonmarketability and non-controlling interest djustments in determining the fair market value of the ecedent's interest in HS Resources (Sched. B, Item 14). (e) The Commissioner erroneously overvalued a promissory ote executed by Arcadio Cardenas, dated May 5, 1989, by failing o value the promissory note at fair market value, in light of ll the relevant facts and circumstances, at the time of ecedent's death, including, but not limited to market onditions, proper discount rates, and debtors' reasonable bility to pay (Sched. C, Item 4). (f) The Commissioner erroneously overvalued a promissory ote executed by Seaside Development Company, dated June 26, 989, by failing to value the promissory note at fair market alue, in light of all the relevant facts and circumstances, at he time of decedent's death, including, *96 but not limited to arket conditions, proper discount rates, and debtors' easonable ability to pay (Sched. C, Item 5). (g) The Commissioner erroneously includes the Northwestern utual Life Insurance proceeds in the amount of $ 1,994,314 in he decedent's estate. The Commissioner fails to take into ccount that at the date of death the proceeds had not been eceived and the asset that was includible in the estate was a isputed contingent claim for payment of the insurance proceeds. Northwestern Mutual had taken the position that no insurance was in place and therefore, the value to be included in the decedent's estate is limited to the amount a willing-buyer would pay for a claim against Northwestern Mutual taking into account the strength of the estate's claim, discounted for expected costs of litigation and the time value of money without the benefit of any knowledge of subsequent events. (h) The Commissioner erroneously takes into account events subsequent to the date of death in valuing a cause of action against Transamerica Insurance for fire loss to 921 S. Main Street, Salinas, California (Sched. G, Item 1). (i) The Commissioner erroneously takes into account events subsequent*97 to the date of death in valuing a claim by Ruth Askey against Values Inc. Realty, a corporation in which the decedent was sole shareholder. (j) The Commissioner erroneously disregards the claim of Edith Franz against the estate (Sched. K, Item 49). (k) The Commissioner in determining a value for Values, Inc. Investment makes a mathematical error in the amount of $ 50,000. (l) The Commissioner in determining a value for Values, Inc. makes a mathematical error in the amount of $ 40,000.5. The facts upon which the Petitioner relies, as the basis of this case, are as follows: (a) As of the date of death, the decedent owned fractional, nonmarketable interests in several pieces of real property and therefore a nonmarketable and noncontrolling interest adjustment (discount) must be applied, along with an adjustment for cost of liquidation, in order to determine the true fair market value of the decedent's interest in those properties. (b) As of the date of death, the decedent owned fractional, nonmarketable interests in several partnerships which owned illiquid real property and therefore, a nonmarketable and noncontrolling interest adjustment (discount) must be applied, along*98 with an adjustment for cost of liquidation, in order to determine the true fair market value of the decedent's interest in those partnerships. (c) As of the date of death, the decedent was the sole shareholder in several corporations which owned illiquid real property and therefore, a nonmarketable interest adjustment (discount) must be applied, along with an adjustment for cost of liquidation, in order to determine the true fair market value of the decedent's interest in those corporations. (d) The correct method of valuing decedent's remainder interest in a 50% interest in real property located at 100 Carlton Road, Watsonville, California is to start with the value of a 50% undivided fractional interest in real property of which it is appropriate to apply nonmarketable and noncontrolling interest adjustments and then apply provisions of Section 20.2031-7 of the Estate Tax Regulations to determine the value of the remainder interest in a fractional interest of real property. The Estate first determined the value of a 50% interest in the real property without the application of any nonmarketable or noncontrolling interest adjustment, then applied the provisions of Section 20.2031-7, *99 then applied a 25% fractional interest adjustment. Although the fractional interest adjustment should have been applied prior to applying the provisions of Section 20.2031-7, there is no difference in the final determination of value. (e) All properties with title in the name of the decedent, as well as all properties held by a corporation in which the decedent is the sole shareholder and real property held by partnerships of which the decedent was a partner were appraised by the probate referees in the respective counties. The Petitioners also hired private, independent appraisers to value certain properties. The estate therefore had two different opinions as to value on certain properties. The estate therefore is entitled to make an educated decision which appraisal the Petitioners, having knowledge of the properties, believe to be the most accurate representation of fair market value. (f) As of the date of death, the decedent held a promissory note executed by Arcadio Cardenas dated May 5, 1989, in the face amount of $ 60,000, with interest payable at 9% per annum, payable interest only monthly, all due and payable on June 1, 1994. This promissory note was evaluated by the Probate*100 Referee, Dent Snider, taking into account the ability of the debtor to repay the note as of the decedent's date of death, the fact that this note is secured by a second deed of trust causing the decedent to satisfy the first deed of trust in the case of foreclosure, and an inquiry performed by the Probate Referee of local business people engaged in the purchase of promissory notes. (g) As of the date of death, the decedent held a promissory note executed by Seaside Development Company dated June 26, 1989, in the face amount of $ 200,000, with interest payable at 10% per annum, payable quarterly, all due and payable on June 26, 1992. This promissory note was evaluated by the Probate Referee, Dent Snider, taking into account the ability of the debtor to repay the note as of the decedent's date of death, the fact that this note is secured by a second deed of trust causing the decedent to satisfy the first deed of trust in the case of foreclosure, and an inquiry performed by the Probate Referee of local business people engaged in the purchase of promissory notes. (h) On January 25, 1990, the day before the decedent died, the decedent commenced the process for purchasing life insurance*101 by signing as proposed insured and proposed owner a Northwestern Mutual Life Insurance application for life insurance to be issued in the face amount of $ 2 million and left it with the insurance agent for Northwestern Mutual even though standard underwriting practices require as condition of review, acceptance, and issuance of requested life insurance coverage that a physical examination be undergone by the prospective insured. No physical exam took place prior to death therefore the insurance company refused to pay the life insurance proceeds pursuant to the mere application and thus at the date of death, decedent's estate only possessed a contingent disputed claim in the amount of $ 2 million which was reasonably valued by Petitioners at $ 200,000 based on advice of Petitioner's litigation counsel. After negotiations over a period of months and finally a threat of a lawsuit by the estate's litigation attorney, the insurance company decided that, although no insurance policy had ever been issued, or approved, and the decedent had not completed the required medical exam, the company would pay proceeds to the proposed beneficiaries in the amount applied for. The only asset which the*102 decedent had at the date of death was an insurance claim based upon an application that was but the first step in an incomplete underwriting process. The fair market value of such a claim is based on the price at which it would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. Therefore, such a claim must be valued based on the facts reasonably known at the date of death and all subsequent events are not considered in fixing fair market value. A willing buyer would take into account the strength of the claim, discounted for expected costs of litigation and the time value of money without the benefit of any knowledge of subsequent events. (i) On the date of death, the decedent had a suit pending in Monterey County Superior Court against Transamerica Insurance Group for fire loss to a property owned by decedent located at 921 S. Main Street, Salinas, California. Prior to the date of death, most of the insurance proceeds had already been paid to the decedent, and Transamerica had filed a cross-claim for reimbursement from the decedent of part of the proceeds paid to*103 him. Transamerica later settled the suit for $ 150,000 further payment to the decedent. Under the circumstances, such a claim must be valued based on the facts reasonably known at the date of death and all subsequent events are not considered in fixing fair market value. A willing buyer would take into account the relative strengths of decedent's claim and Transamerica's cross-claim, discounted for expected costs of litigation and the time value of money without the benefit of any knowledge of subsequent events. (j) On June 12, 1982, the decedent entered into a written agreement with Ruth Askey of Fairway Realtors to provide management advice, real estate sales, surveys, etc. for the sum of $ 2,200 per month for the lifetime of the present owner of Fairway Realtors. On June 10, 1990, Ruth Askey filed a Creditor's Claim against the estate for a contingent amount. The estate valued the contractual right of Ruth Askey on the estate tax return at $ 60,000. The claim was later settled for $ 21,000. Under the circumstances, such a claim must be valued based on the facts reasonably known at the date of death and all subsequent events, such as settlement of the claim, are not considered*104 in fixing fair market value. (k) On June 19, 1990, Edith Franz filed a Creditor's Claim against the estate based on a business agreement among the decedent and Edith Franz involving various partnerships and/or joint ventures in certain real properties in and around Santa Cruz County. Edith Franz's claim is for a minimum of $ 1,059,000 all of which the estate has disputed. The case is in litigation and is scheduled for trial in January, 1994. Under the circumstances, such a claim was valued at $ 650,000 upon the advice of Petitioner's legal counsel and taking into account the facts reasonably known at the date of death and all subsequent events are not considered in fixing fair market value.WHEREFORE, the Petitioner prays that this Court may hear the proceeding, and1. Determine that the Commissioner erred as alleged in each assignment of error set forth in paragraph 4 above;2. Find that there is no deficiency in estate tax for the Estate of Stewart B. Kett;3. Give such other and further relief as the Court may deem appropriate.